Good morning. May it please the court. My name is Gail Johnson and I represent Kevin Jackson in this direct appeal from his criminal convictions. I'd like to begin by alerting the court that I did have a chance to confer informally with Ms. Epperly before argument today and I anticipate that she will be conceding now the entirety of the second claim on appeal that we raised, the double jeopardy claim. They have previously conceded in their brief as to count two. My understanding is she will today concede it as to count three as well. Thank you, counsel. One other housekeeping matter. I apologize, but apparently So so appellant is so the double jeopardy issue is off the table now. Correct. It will be fully conceded today by the government. And I appreciate the concession. The other matter we conferred about is I apologize to the court. There were some exhibits that had been originally designated but did not get in the record. I've conferred also about that with Ms. Epperly and she will assist. We will file a motion if necessary and she will assist in getting those exhibits to the court. Thank you. So with respect, I'm going to focus my remarks today on Mr. Jackson's first claim on appeal. The claim that his right to due process under the Fifth Amendment and his right to a fair jury trial under the Sixth Amendment was violated here. And that reversible reversal is appropriate on plain error review because of the combination of the district court's erroneous instructions having to do with jury unanimity, as well as the district court's erroneous response to a note that was sent out by the deliberating jury. So the logical framework for this claim is that there are three possible outcomes from jury deliberations. A verdict of guilty that requires jury unanimity, a verdict of not guilty that also requires jury unanimity, and a third option, which is of course no verdict, what we call a hung jury, where by definition, you know, the jury is unable to reach unanimity. Here, the district court departed from the pattern instruction and twice instructed the jury in a freestanding way, you must all agree. That is incorrect. It would have been correct, as the pattern says, to say essentially in order to reach a verdict, you must all agree. But that's not what the judge did here. And that error was then compounded by the problematic response. Yes. What else would the court have been referring to or the instruction have been referring to besides the verdict? I'm not saying it was referring to something else. What I'm saying is when there are two options, which are verdicts, and the third option is a nonverdict, by instructing the jury, you must all agree. If the court is saying, well, that is referring to a verdict, you are foreclosed. It could just mean you must all agree if you want to choose options one or two. I mean, I didn't think it precluded a hung jury. I thought it was saying is that if you're going to reach an agreement, it's got to be unanimous. He didn't say it that clearly, but I think that's not an impermissible reading of what he said. Well, Your Honor, I respectfully disagree. I think an instruction such as the court, as you've posited, would have been correct and non-erroneous. But the instruction here was not that. Again, it was a freestanding, you must all agree. This jury was left with the wrong impression that the only way to get out of that jury deliberations room, the only way to end deliberations, was to reach a unanimous verdict. That foreclosed the third option of a hung jury, which, again, as the U.S. Supreme Court recently reminded us in the Ramos case. I know district court judges don't like hung juries. But as the Supreme Court reminded us, sometimes this is an important safeguard against overzealous prosecutions. So a hung jury is not a waste of time. Your Honor, I think if there are some instructions that are correct and some instructions that are incorrect, the error still exists. The instructions that I'm... But we're told, you read the instructions as a whole, total. I mean, that's a pretty clear requirement in interpreting them. Absolutely. And in the places on, you know, page 343 and 348, which are instructions, a jury's duty to liberate and the final instruction, they don't reference the language, Judge Matheson, that you just did. They say the decisions you reach in the jury room must be unanimous, period. You must all agree. And then that's repeated. Wait a minute, Ken. So that's the second paragraph in the jury's duty to deliberate. The if you can language is in the preceding paragraph. It's right there in the second sentence. Correct. But I don't think that that obviates the final instruction that says the decisions... Why doesn't that convey that the jury does not necessarily have to reach an agreement? Because it's contradicted by the other language. And when we have erroneous language... What other language are you talking about? Quote, the decisions you reach in the jury room must be unanimous, period. You must all agree, period, end quote. Decisions, decisions. It says try to reach an agreement if you can. An agreement is a decision. The decision has to be unanimous. Where's the conflict? The conflict, Your Honor, is that it didn't say verdicts. It doesn't say the verdicts must be unanimous. It says the decisions must be unanimous. But they may have reached a decision, for example, that they are not going to be able to reach. How would a hung jury be a unanimous decision? It wouldn't be unanimous if you're a hung jury. Exactly, Your Honor, and that's my point. This instruction foreclosed that possibility, which was a possibility that Mr. Jackson was entitled to. And by taking that off the table... This instruction says that they need to reach an agreement if they can't. Why is that a signal that they don't necessarily have to reach an agreement? Because the later language is unambiguous and clear. It is two declarative sentences, and it is repeated. I understand your argument. And I'm happy to turn to the second part of this claim, which is the district court's note in response to the deliberating jury. And I think here, again, it's important to take account of the framework in which the criminal trial occurs. The district court said you have all the evidence necessary to reach a verdict. Well, of course, our criminal justice system is asymmetric. The government bears the burden of proof. The government has to introduce evidence. The defendant has no burden of proof and does not have to produce any evidence. So to instruct the jury, you have all the evidence you need to reach a verdict, is problematic in two ways. It leans towards the side of the government, because if the verdict is supported by evidence, that's solely and uniquely a verdict in favor of the government for guilt. And second, again, it undermines the possibility that it kind of expresses the judge's view that there's evidence here and they should reach a verdict, as opposed to you might not be able to agree. I note in the record that the district court told the jury in the instruction that if they sent him a written message, 90% of the time after I have consulted with counsel, the response I would give to your question is, you have all of the evidence necessary for you to reach your verdicts. They were even told that ahead of time. I don't understand what's confusing about that. Your Honor, it's not... You have all the evidence you need to render a verdict, whether the verdict is guilty, not guilty. Whatever the verdict is, whatever the decision is. So, Your Honor, I have a couple points. The fact that the judge repeated the erroneous instruction earlier, I don't think makes it any less erroneous. The judge didn't say, whatever the verdict is, your verdict might be this, your verdict might be that. The judge didn't say that. He said, you have the evidence you need to reach a verdict. The only time a jury needs evidence to reach a verdict is when that verdict is in favor of the government and is a verdict of guilt. You do not need any evidence as a jury to find the defendant not guilty. You simply need to find that the government, of course, has failed to prove its case beyond a reasonable doubt. So that's the asymmetric distinction that I was leading off with. That's why it's important to look at this in the context of, what is a verdict in favor of the government? I'm a little confused because usually when the jury comes back and the foreman stands up, the court says, do you have a verdict? And the jury says, yes. And the judge says, what is your verdict? And you're expecting an answer, our verdict is guilty or not guilty. So not guilty is a verdict as well as guilty. Not guilty is a verdict, but it's not a verdict that requires any evidence. And the judge's response to the note here expressly referred to them having the evidence necessary to reach a verdict. That can only apply to the verdict that is in favor of the government. It does not apply to the verdict that is in favor of the defendant. And, Your Honor, I do think, in my experience with trials, if they're non-unanimous, that comes out. And then if there's a verdict, they send out the written verdict form. You know, there's a little bit of process in between there. But I think the larger point, again, here is it would have been perfectly proper for the judge to say, you've received all the evidence you're going to receive. You're not going to receive any more. He didn't do that. It would have been perfectly proper to say, please look back at that exhibit, nothing else. But what he did here is said, you've received all the evidence you need to reach a verdict. That gets us into the unconstitutional territory where we all know the judge should not be commenting on the evidence. And that that is, again, I think a real problem here under the Fifth and Sixth Amendment. If I may reserve my remaining few minutes for rebuttal. Thank you. Your Honors, may it please the Court. My name is Linda Epperle. I'm an assistant United States attorney from Muskogee, and I represent the government in this case. There are a few preliminary housekeeping matters that I need to draw to the Court's attention and ask the Court's forgiveness for committing these errors. The first, while not necessarily an error, was mentioned a moment ago by my colleague. After reading the briefs again, looking at the instructions again, and preparing for oral argument, the government had initially conceded the double jeopardy argument as to the victim. After reading the briefs more carefully and noting that the jury was instructed that either robbery of the victim and or Mr. Berryhill would suffice, we would agree that that should also be dismissed as to count three because it's impossible to tell which of those two people the jury relied upon. Now, under the category of mistakes that I made in drafting this brief, I'd like to call two to your attention. First, the heading for Proposition 3 indicates that we are looking at attempted robbery as what underlies the 924C. The argument in our brief, the cases we cite, what was used in the instructions all has nothing about the word attempted, and I would ask the Court to notice that. Are you conceding the issue then? No, Your Honor. We would like to fully continue to argue on the 924C that the robbery in Indian Country was a sufficient crime. You just want to amend the heading. I just want to get rid of the word attempted.  In my heading. I think that the body of the brief all reads correctly as to robbery overall. A lot of times it might not make a difference, but with Taylor, we know that the Supreme Court has held that attempted Hobbs Act robbery cannot be a crime of violence. This Court has previously held before Taylor that robbery can. When our heading says attempted, we don't want to fall under Taylor when that's really not what happened here. And finally, we cited at the very end of our brief on page 25 a case called Gruber that is actually an Eastern District of Oklahoma case that we noted in the citation was Tenth Circuit. That was incorrect, and we certainly didn't mean to mislead the Court, and we apologize. As to this case in general, on jury and amenity, I believe that the Court has made already most of the points that I would have focused on. Counsel? Yes. Before you jump into that issue, I am just, I don't want to spend a lot of time on this, but I'm interested in this concession on the double jeopardy issue. Are you saying that the, that there was double jeopardy based, that the count two, or I guess it was count three robbery involving Mr. Berryhill, are you saying that that could be a predicate for felony murder? In other words, I thought the concession in your brief about counts one and two on double jeopardy, I understood that part, but I'm not really understanding this concession this morning about count three. Are you saying that there is a double jeopardy problem between count one and count three? And since we're on a plain error, that it's plainly a violation of double jeopardy, or are you saying something else? I'm just interested in the nature of this concession. Well, the concession is based on the fact that the jury was instructed that either the attempted robbery of the victim in this case and or the attempted robbery of Mr. Berryhill would suffice. Our original concession was that under double jeopardy, the attempted robbery of the victim is covered by the felony murder conviction. We then argued that a separate felony murder conviction, that for Mr. Berryhill. You mean robbery? I'm sorry, a separate robbery conviction for Mr. Berryhill perhaps could have supported felony murder based upon the things that we argued. However, the instruction on count one told the jury that either the robbery of the victim and or the robbery of Mr. Berryhill would suffice. Given the fact that it was termed in that way, it is impossible for us to say whether the jury relied upon what would have been an appropriate predicate, Mr. Berryhill, or the predicate that now would be barred by jeopardy, double jeopardy of the victim. Okay, thank you. I appreciate that explanation. Yes, it is very confusing, particularly when we then flip to talking about these things as crimes of violence for the 924C count. To be clear, is count two that you want to be dropped? Count two, we had previously conceded in our brief that it could not stand. So count two solves the double jeopardy problem. I think you're now saying both counts, two and three, should be dropped. What I'm now saying is I agree with the merger. Both counts merge? I agree that had the jury, had we charged and had the jury been instructed that felony murder was supported only by the murder of the victim, then we're clearly count two and one of those would have to be dismissed. We believe that the argument as to count three, if it had been separate and we could say that the jury relied only on Mr. Berryhill's, perhaps it would not. So I'm just confused. Do you think that would you be satisfied if count two was determined to be double jeopardy? The conviction on count two, therefore, is remanded for the district court to consider dismissing that. Or in light of all the confusion, maybe it's better just to tell the court that there is double jeopardy and let the district court figure it out. That would be fine with us. I think that, though, the way that the instruction on count one was worded, it's impossible for us to tell whether the jury relied upon the robbery of the victim, the robbery of Dakota Berryhill, or both. Why can't you just pick one? You know, they found robbery on both supports. And one is all you need, because you said and or. So that's all you need. So I guess I am a little confused. I understand that you're conceding count two, at least one of them. Yeah. Which is what I think you conceded in your brief. But I guess I'm not really understanding why you're conceding count three. I think there's some authority out there for the and or language being sufficient. Pick one. But if you're conceding. But you're conceding. I mean, I'm still confused. You're conceding that count two, if count two is determined to be double jeopardy problem and is therefore dismissed as a double jeopardy, you think that solves the double jeopardy problems? Or is there still a potential double jeopardy problem with three? I believe that count. You're correct on count two. If we agree to concede that it should go away, the double jeopardy. There's still a residual double jeopardy on count three. That's my question. Yes. And the problem is we agree with the cases cited in our brief that different victims, you know, could support that finding. However, when we previously know that one of them could not, I believe it could be argued that it's impossible to know whether, you know, which one the jury was basing its verdict on. So you're now saying. So are you claiming that double jeopardy can only be solved by dismissing counts two and three? I believe that the cleaner way to handle this would be to go ahead and allow the district court to dismiss counts two and three. The felony murder would still stand, would not be subject to attack on any double jeopardy ground in the future. And since he's serving a life sentence, it's perhaps cleaner to just take care of it that way. Knowing that also the 924C, if count four is upheld, will add an additional 120 months to that life sentence. You know, this defendant was a defendant who had a criminal history score of 21 and committed his first violent crime at the age of eight. We would like to try to make sure that there's not anything in the future that can allow him to attack this sentence. And that's part of the reason for the concession. As to the jury verdict, if there are not further questions, we agree with all of the comments that the court made as far as respecting the discretion of the court. What the jury was told as far as the ability to reach a verdict, which could be a guilty verdict, a not guilty verdict, or a split. The jury was told in their duty to deliberate that you should try to reach an agreement if you can, that they can decide the case for themselves. They were informed they should not give up their honest beliefs even to try to get the case finished. They were also told that the decisions must be unanimous and you should all agree. That language we submit is substantially similar to what is included in pattern number 1.23 and that the differences were minor. These are the standard instructions that this district judge uses every time. We also agree as to the jury note, we also argue that telling the jury you have all of the evidence necessary for you to reach a verdict is not error. The court told them, broadcast to them before they went back to deliberate, 90% of the time when you're going to ask me to give you more evidence or more law, this is what I'm going to tell you and that is what he told them after consulting with counsel. There also is language in the jury instruction, as Judge Matheson noted, indicating how they were to communicate with the court. This is a couple of paragraphs above the information about 90% of the time. The court told the jury, you know, if you are split, say if you're 6-6 or 8-4, don't tell me the split. So the jury has been reminded that a split is possible, that they will not all automatically reach a decision of guilty or not guilty. This court has held that the court is granted discretion in instructing and dealing with the jury and that also applies to notes to the jury, according to Elanio Moraes. Bottom line on all of this, Your Honor, as to Count Thor, the court did not commit error. But even if this court were somehow to find error, it cannot be plain error because the defendant cannot show that this affected substantial rights. As this court held in flesh, the defendant must show a reasonable probability that but for the error, the results of the proceeding would have been justified. And that's not possible under these facts as set forth in our brief. Unless there's anything further, we'd ask the court to affirm. Thank you, counsel. Rebuttal. Thank you. Very briefly on the double jeopardy issue, I think the way to think about it is that Count 1 has two victims, both Mr. Berryhill and Mr. Jolin. And so when you're thinking about picking two counts, you have to pick between the felony murder count and Count 3 as well. And we, again, we appreciate the government's concession today. In terms of the first claim on appeal, you know, I direct this court's attention to the De Hernandez case from the circuit in 1984. And really the question there about whether that response to the question is confusing or creates a definite possibility of prejudice. That is the standard here. And of course, we are here on plain error review. I would be remiss if I didn't emphasize in our argument today the weakness of the government's case here. We have no objective, physical, reliable forensic evidence that ties my client to the crime scene or to this robbery. There's no DNA. There's no hair, nothing like that. Of course, the one thing that could have definitively identified the perpetrator, the mask that was worn by the robber and discarded at the scene, was never collected and therefore never tested. And so the government is left to rely on a series of witnesses who all, as we've laid out in opening brief, have serious credibility problems. And I would emphasize with Ms. Garza, for example, you know, this wasn't a one-off. She lied to 911. She lied to the responding officer. She lied to the FBI agent. And she lied at the police station. Likewise, with respect to the victim of the robbery who survived, the FBI agent lied to the FBI agent. You know, not only was the identification procedure problematic, which you will see when you have a chance to review Exhibit 17, the video of the photo show up. But also he had originally told his friend that there were two, that he was robbed by two black men. That's never been the government's theory in this case. He then changed his story and said it was one black man. And at that point was identifying Mr. Jackson, again, in our view, at the behest of an unduly suggestive identification process with a six-pack of photos. And then, of course, we have this jailhouse informant. We've emphasized in our brief the fact that he claims to have been selled with my client for three months. The records don't show that. He claims that inmates at the jail could willy-nilly reassign themselves cells. The evidence from the jail officials does not support that. It contradicts it. And moreover, he claims that the confession that my client made to him was that my client had supposedly shot the victim three times. And that is inconsistent with the medical examiner's evidence testimony of this case. And that can be found at Volume 3, page 290. The medical examiner explains that the victim, the decedent, was shot six times, not three times. So for all those reasons, we'd ask the court to reverse. Thank you, counsel. Appreciate your arguments. The case will be submitted and counsel are excused.